**EXHIBIT A**

IN THE SUPERIOR COURT
OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

| | |
|---|---|
| ELIZABETH SPOKOINY, | ) |
| Plaintiff, | ) No. |
| vs. | ) **COMPLAINT** |
| UNIVERSITY OF WASHINGTON MEDICAL CENTER, | ) |
| Defendant. | ) |

COMES NOW the plaintiff ELIZABETH SPOKOINY, by and through her attorney of record and for cause of action against the defendant, complains and alleges as follows:

1. That this Court has jurisdiction over the subject matter and parties hereto, and venue is proper with this Court, as the plaintiff, ELIZABETH SPOKOINY, is a resident of King County, Washington; the defendant, UNIVERSITY OF WASHINGTON MEDICAL CENTER, conducts business in King County, Washington; and all incidents described herein occurred in King County, Washington.

2. Elizabeth Spokoiny worked as a Registered Nurse at University of Washington Medical Center ("UWMC") Roosevelt Pain Clinic from August 2015 through December 2020. She was the coordinator of the Spinal Cord Stimulator Program and consistently rated as one of the distinguished performers in the department.

COMPLAINT - 1

**Larry S. Spokoiny, Esq.**
4306 245th Avenue SE
Sammamish, Washington 98029
Telephone: (425) 503-3949
Facsimile:  (425) 313-0118

3. From the beginning of Ms. Spokoiny's employment at UWMC until the end of 2019 (when the employer's policies changed), she was denied at least one of her two allowable rest breaks each and every shift she worked.

4. Ms. Spokoiny has a pre-existing vision disability for which accommodation was requested from UWMC.

5. In January 2019, Ms. Spokoiny suffered a workplace shoulder injury when an obese dementia patient nearly dragged her to the ground by the hair as she was attempting to assist the patient in the bathroom after the patient had been discharged.

6. Ignoring Ms. Spokoiny's doctor's certification of a reduced schedule of 30 hours per week from March 4, 2019 to June 1, 2019, interim manager Margarita Sarabia refused to accommodate this schedule request. Instead, she demanded that Ms. Spokoiny delay her treatment for at least 30 days. Ms. Sarabia told Ms. Spokoiny that if she took time off for FMLA, it would be considered "*leave without pay*" and Ms. Spokoiny would be subject to discipline up to and including termination.

7. Based on the prior disability and workplace injury, Ms. Sarabia routinely referred to Mr. Spokoiny as "*high functioning*" to describe her strong level of performance despite numerous healthcare challenges.

8. In or around April 2019, Ms. Spokoiny filed a whistleblower complaint against medical assistant Mandi Garcia for her actions in accepting a gift of game meat from a brain-injured patient, and discussing plans to go on a hunting trip with the patient.

9. When Ms. Spokoiny reported Ms. Garcia's ethical violation to Ms. Sarabia, she was surprised that Ms. Sarabia permitted Ms. Garcia to keep the game meat because the value was far in excess of the $50 gift limit applicable to state employees.

10. Beginning in June 2019 and continuing into 2020, Ms. Spokoiny expressed her alarm and requested a formal audit of the allocation of overtime to nurses in the department. While Ms. Spokoiny's initial suspicions concerned the uneven distribution of overtime, the informal audit results revealed a startling pattern of

COMPLAINT - 2

Larry S. Spokoiny, Esq.
4306 245th Avenue SE
Sammamish, Washington 98029
Telephone: (425) 503-3949
Facsimile:  (425) 313-0118

overtime abuse perpetuated by Ms. Sarabia and nurse Chaya Mushkie Davey. Ms. Spokoiny subsequently filed a whistleblower complaint regarding the excessive overtime.

11. In a period of slightly more than 4 months, Ms. Sarabia billed 121.00 hours of overtime, while most nurses including Ms. Spokoiny received little to no overtime. Ms. Davey's overtime use exceeded even Ms. Sarabia's. In the month of December 2019 alone, Ms. Davey claimed an astonishing 127.75 overtime hours,

12. Ms. Davey was brazen enough to take overtime even on days when she warned other people not to do so, and she tried to punish Ms. Spokoiny for reporting the financial abuse by telling her to wash down the walls of the hospital in the early days of COVID-19 outbreak.

13. During the entire course of his employment in the Roosevelt Pain Clinic, radiology technician Cooper Wilhelm subjected Ms. Spokoiny to an unwanted sexually-charged and violence-oriented environment, which made her both uncomfortable and fearful for her safety.

14. In the summer of 2019, Mr. Wilhelm's behavior worsened. Ignoring his support role, he distributed a bizarre and demeaning manifesto to all of the nurses in the Roosevelt Pain Clinic "instructing" them on how to behave in "his" procedure area. For unexplained reasons, the distribution of the offensive message was approved by then-manager Julie Waldhausen.

15. Seemingly emboldened by his newfound, albeit self-appointed sense of power, Mr. Wilhelm engaged in continued erratic behavior at the workplace. Among the myriad examples:

(i) he issued veiled threats by talking about guns and how he liked to use them;

(ii) on his way to the bathroom, he asked Ms, Spokoiny if she wanted to hold his penis to assist;

(iii) he backed Ms. Spokoiny and a female coworker into the corner using heavy machinery while they were sedating patients, thereby trapping them and exposing them to unnecessary levels of radiation;

COMPLAINT - 3

Larry S. Spokoiny, Esq.
4306 245th Avenue SE
Sammamish, Washington 98029
Telephone: (425) 503-3949
Facsimile:  (425) 313-0118

(iv) he regularly stated than men were better than women at _____ (driving, nursing, everything); and

(v) he intentionally embarassed Ms. Spokoiny by saying out loud that he could see through her clothing.

16. Each of these offensive incidents was duly and promptly reported to management. This last event occurred on September 2, 2019 and is especially noteworthy because it coincided with Mr. Wilhelm's immediate resignation once he was confronted with his wrongdoing. Specifically, Mr. Wilhelm towered over Ms. Spokoiny while she was seated, touched her on the back, and half-whispered "*I can see through your clothes. Don't you care?*"

17. At first, Ms. Spokoiny was confused and thought she had done something wrong. She felt as though Mr. Wilhem was staring at her using x-ray glasses from the back of old comic books. She ran to the bathroom but the shirt and pants looked fine. She checked with coworkers who reassured her. She had worn these same clothes many times before and since without issue.

18. Ms. Spokoiny quickly realized that Mr. Wilhelm's comments were made to assert dominance over her, and to make her feel bad about herself. Ms. Spokoiny promptly reported the comments to Ms. Sarabia, who dismissively remarked "*maybe you made him feel uncomfortable*".

19. Ultimately, Ms. Sarabia informed Mr. Wilhelm's manager Michael Marsolini about what had transpired. Upon information and belief, Mr. Wilhelm conceded his wrongful conduct and resigned on the spot.

20. In response to Ms. Spokoiny's legitimate report of sexual harassment by Mr. Wilhelm, her manager Ms. Sarabia and her manager's superior Ms. Bagdasarian instantly embarked upon a campaign to smear Ms. Spokoiny's stellar reputation by actively soliciting negative information about her from coworkers.

COMPLAINT - 4

21. Behind Ms. Spokoiny's back, and counter to the written guidance on how to handle sexual harassment claims set forth in UWMC's governing documents which are supposed to be in compliance with Title IX, on September 3, 2019, which was the day after Ms. Spokoiny complained about Mr. Wilhelm and the same day Mr. Wilhelm resigned, Ms. Sarabia arranged a secret meeting with her superior Ms. Bagdasarian for no other purpose than to investigate Ms. Spokoiny.

22. Despite lack of any reason for their attendance, and in violation of Ms. Spokoiny's right to privacy that sexual harassment victims are entitled to receive, fellow nurses Amy Boyd and Ms. Davey were invited into the secret meeting, while Ms. Spokoiny was apparently the sole nurse left working in the department as the others discussed her personal sexual harassment experience behind her back.

23. In the September 3, 2019 handwritten secret meeting notes, Ms. Bagdasarian not only wrongfully accuses Ms. Spokoiny of making "*false statements*", but also makes an affirmative attempt to gather dirt on Ms. Spokoiny: "*Asked all to please document all examples of behavior in violation of Service Culture Guidelines and send to me.*"

24. The September 3, 2019 secret meeting where Ms. Sarabia, Ms. Bagdasarian and others launched an investigation of Ms. Spokoiny for reporting a verifiable case of sexual harassment, while no one at UWMC provided her with the resources available to such victims, constitutes deliberate indifference under the law.

25. None of the university resources or support to victims of sexual harassment were ever discussed with Ms. Spokoiny in response to the Wilhelm incident. To the contrary, contemporaneous emails and text messages from Ms. Sarabia show that Ms. Spokoiny's attempt to visit employee health in order to deal with the stress from the sexual harassment was challenged.

26. Out of the blue after the sexual harassment incident by Ms. Wilhelm, Ms. Spokoiny received multiple email messages from both Ms. Sarabia and her supervisor Richelle Bagdasarian regarding an "*investigatory meeting*". The sole reason ever provided for the investigation was that on a single occasion, against Ms. Sarabia's

COMPLAINT - 5

Larry S. Spokoiny, Esq.
4306 245th Avenue SE
Sammamish, Washington 98029
Telephone: (425) 503-3949
Facsimile:  (425) 313-0118

27. wishes, Ms. Spokoiny had spoken to a medical doctor in the department who had sought her out for consultation.

27. By the time Ms. Spokoiny attended the sham investigatory meeting in December 2019, Ms. Sarabia had already resigned or been removed as manager, so the UWMC personnel in attendance were Ms. Bagdasarian and senior HR representative Ana Marie Keeney.

28. The rationale for this sham investigatory meeting was never provided to Ms. Spokoiny or her union representative Ed Zercher, neither orally nor in writing.

29. Although Ms. Spokoiny had never met Ms. Keeney before, she was immediately struck by her sour expression and perturbed that she was vigorously shaking her head in response to everything Ms. Spokoiny said. Furthermore, she was alarmed that both Ms. Bagdasarian and Ms. Keeney felt competent to address clinical practice issues, given that neither Ms. Bagdasarian nor Ms. Keeney have any apparent nursing or other clinical certification whatsoever.

30. Despite the fact that Ms. Spokoiny's actions were wholly compliant with the union contract as well as all state and federal employment laws, Ms. Bagdasarian and Ms. Keeney repeatedly asserted that there would a forthcoming "*formal action plan*" against Ms. Spokoiny based on "*fiscal irresponsibility*" (even though Ms. Spokoiny was consulting with a department doctor at the time).

31. To the best of her knowledge, Ms. Spokoiny was the only employee in the Roosevelt Pain Clinic who was ever investigated during her tenure at UWMC.

32. Ms. Bagdasarian used the threat of a formal action plan in an attempt to induce Ms. Spokoiny to quit her job. By email message of January 6, 2020, with copy to acting-manager Ms. Davey, Ms. Bagdasarian stated the following: "*I am also completing a formal action plan in follow up to the investigatory meeting we had which I will present to you before the end of the week. If you decide to tender your resignation prior to the end of this month, we would forego your performance evaluation.*"

COMPLAINT - 6

Larry S. Spokoiny, Esq.
4306 245th Avenue SE
Sammamish, Washington 98029
Telephone: (425) 503-3949
Facsimile:  (425) 313-0118

33. Ultimately, Ms. Bagdasarian never produced even a scintilla of evidence to support any action plan (whether formal or informal), much less her call for Ms. Spokoiny's resignation. However, Ms. Bagdasarian inserted a draft document entitled "***Scheduled Formal Counseling***" into a shadow personnel file she maintained for Ms. Spokoiny, without sending a copy of such document to Ms. Spokoiny for comment, review or challenge.

34. The sham investigatory meeting in December 2019 was not based on just cause, and was arbitrary and capricious. Upon information and belief, Ms. Sarabia, Ms. Bagdasarian and Ms. Keeney deliberately made false statements of fact in a concerted effort to force Ms. Spokoiny to resign and forego her contractual, state and federal employment rights.

35. Ms. Spokoiny responded to Ms. Bagdasarian's January 6, 2020 email in part as follows: "***First of all, I want to make it clear that I have no intention to resign from my position. Recent email communications on the topic are puzzling and unconscionable in the transparent attempt to force me to resign, merely because I am complaining about ongoing discrimination, retaliation and unpaid wages at the workplace.***"

36. After Ms. Spokoiny declined to resign, Ms. Bagdasarian generated a performance review that was mostly dictated by Ms. Sarabia and Ms. Garcia, the former who discriminated and retaliated against Ms. Spokoiny on an almost daily basis and the latter who Ms. Spokoiny had reported almost a year earlier for ethical breach.

37. Entirely disregarding Ms. Spokoiny's 4-year history of distinguished performance reviews, Ms. Bagdasarian (with the assistance of Ms. Sarabia and Ms. Garcia) manipulated Ms. Spokoiny's performance review to a score of 1.5 out of 3.0. The only truthful negative statements about Ms. Spokoiny were related to her continuing insistence on asserting her workplace rights (e.g. medical leave, pay, breaks, etc.) and complaining about workplace discrimination and sexual harassment. There were zero truthful comments related to clinical competency at which Ms. Spokoiny excels.

COMPLAINT - 7

**Larry S. Spokoiny, Esq.**
4306 245th Avenue SE
Sammamish, Washington 98029
Telephone: (425) 503-3949
Facsimile:  (425) 313-0118

38. Under the union contract, Ms. Spokoiny 2019 annual performance review (for the period October 1, 2018 to September 30, 2019) should not have contained reference to alleged events that occurred outside the designated review period. The 2019 annual performance review, which was not completed until January 2020, ignored all of the positive comments from Mr. Spokoiny's peers about patient care and focused instead on a petty narrative of unimportant and unproven paperwork and voicemail issues.

39. Ms. Spokoiny's 2018-2019 annual performance review contains multiple false statement of facts, is primarily based on hearsay, addresses alleged minor incidents that occurred outside the relevant review period, and was generated in retaliation for Ms. Spokoiny's protected workplace activity.

40. In May 2020, Ms. Spokoiny obtained her Doctorate in Nursing Practice from Washington State University.

41. Although she is fully qualified and otherwise meets the hiring qualificatuions for Nurse Practitioners, Mr. Spokoiny believes that UWMC has punished her by putting a Do-Not-Hire notice in her personnel file to prevent future job opportunities at UWMC.

42. On June 18, 2020, the U.S. Equal Employment Opportunity Commission, San Francisco Office, initiated its formal charge of employment discrimination on Ms. Spokoiny's behalf.

43. On September 30, 2021, EEOC terminated its review and issued Ms. Spokoiny a right-to-sue letter.

44. On October 25, 2021, Ms. Spokoiny filed a state tort claim with UWMC after exhausting all applicable administrative remedies to no avail. In the brief space allowed, Ms. Spokoiny listed "***Disparate Treatment Under Title VII / Title IX / WLAD***", "***Retaliation Under Title VII / Title IX / WLAD***", "***Failure To Accommodate Under WLAD***" and "***Unpaid Wages***" as the bases for her claims.

COMPLAINT - 8

**Larry  S. Spokoiny, Esq.**
4306 245th Avenue SE
Sammamish, Washington 98029
Telephone: (425) 503-3949
Facsimile:  (425) 313-0118

## I. DISABILITY ACCOMMODATION

45. Despite acknowledgement by UWMC Human Resources that Ms. Spokoiny was entitled to a special desk at work due to continuing medical issues, her managers routinely forced her to work in an area without providing such accommodations.

46. Although Ms. Spokoiny was informed an update to her accommodations would be made, the meeting was cancelled and she was denied the opportunity to update her current needs.

47. Based on the facts set forth above, UWMC discriminated against Ms. Spokoiny's disability by routinely and systematically delaying and/or denying her requests for disability accommodation, and then retaliated against her for requesting such accommodation.

## II. SEXUAL HARASSMENT

48. In the Summer of 2019, Ms. Spokoiny filed a sexual harassment claim against radiology technician Cooper Wilhelm based on ongoing lewd and offensive behavior.

49. Initially Ms. Spokoiny's managers were dismissive of her complaint and even bizarrely accused her of "provoking" Mr. Wilhelm, based on her refusal to be continuously demeaned and leered at by Mr. Wilhelm.

50. Although Ms. Spokoiny was clearly the victim of ongoing harassment, she was forced to attend a mediation hearing with Mr. Wilhelm present in the same room, where he continued his pattern of aggressiveness in trying to silence her.

51. After the mediation hearing, Ms. Spokoiny was immediately put right back into close quarters with Mr. Wilhelm for several more excrutiating weeks, until his final lewd comments about her private parts confirmed that what she had been saying all along was true and his employment belatedly ended.

52. Based on the facts set forth above, UWMC discriminated against Ms. Spokoiny on the basis of sex in allowing Cooper Wilhelm's harassment to continue unabated for several months even after she had reported it through appropriate channels.

COMPLAINT - 9

Larry S. Spokoiny, Esq.
4306 245th Avenue SE
Sammamish, Washington 98029
Telephone: (425) 503-3949
Facsimile: (425) 313-0118

### III. WORKER'S COMPENSATION

53.     Ms. Spokoiny had an active worker's compensation claim related to an injury suffered on the job. This is a state mandated employee benefit and not subject to manager approval in any way, shape or form. Even though all necessary medical paperwork had already been provided as part of Department of Labor & Industries claims process, Ms. Spokoiny's managers (especially Ms. Sarabia) regularly questioned her about her personal medical condition and demanded independent proof.

54.     Based on the facts set forth above, UWMC discriminated against Ms. Spokoiny's disability and interfered with her workplace injury claim by routinely and systematically denying her requests for time off despite the aforementioned medical certification.

### IV. FAMILY MEDICAL LEAVE ACT

55.     Ms. Spokoiny had an active Family Medical Leave Act (FMLA) claim related to both her worker's compensation claim as well as non-work-related medical conditions. FMLA is a federally mandated employee benefit and not subject to manager approval in any way, shape or form.. Even though all necessary medical paperwork had already been provided as part of the FMLA process, Ms. Spokoiny's managers (especially Ms. Sarabia) regularly questioned her about her personal medical condition and demanded independent proof.

56.     Based on the facts set forth above, UWMC discriminated against Ms. Spokoiny's disability and interfered with her FMLA claim by routinely and systematically denying her requests for time off despite the aforementioned medical certification.

### V. UNPAID WAGES (PRECEPTOR PAY / REST BREAKS)

57.     UWMC still owes Ms. Spokoiny compensation for earned yet unpaid preceptor pay and disallowed rest breaks. Ms. Spokoiny's former manager Julie Waldhausen conceded that she served as preceptor for two nurses in Ms. Spokoiny's 2018 annual performance review.

58.     Per the WSNA union contract, Ms. Spokoiny was entitled to preceptor pay of $1.50 per hour for training new nurses. She conservatively estimates that she devoted 200 hours to training of others yet have received zero in compensation. The unpaid amount is calculated at

COMPLAINT - 10

$1.50 per hour times 200 hours = $300.00. (Note that the nurses who trained Ms. Spokoiny were indeed properly paid for their preceptor time.)

59. Per the WSNA union contract, Ms. Spokoiny was entitled to two 15-minute rest breaks per full shift, but had been systematically denied approximately 50% of all rest breaks from her start date of August 2015 to the end of 2019. The unpaid amount is calculated at 15 minutes (¼ hour) per day times $42.00 hourly pay rate times 850 days times 1.5 overtime premium = $13,387.50.

60. The overtime premium is pursuant to <u>Washington State Nurses Ass'n v. Sacred Heart Med. Ctr.</u>, 175 Wn.2d 822, 287 P.3d 516 (2012), where the Washington Supreme Court announced that employers must pay for missed rest breaks as additional time worked. If the additional work time is overtime (i.e., it pushes the employee beyond 40 hours for the week, or the employee has already worked more than 40 hours in the week), the missed rest breaks must be compensated at the overtime rate.

61. Based on the facts set forth above, UWMC retaliated against Ms. Spokoiny for requesting payment of legally earned but unpaid wages. Washington law entitles Ms. Spokoiny to seek double damages plus attorney fees from UWMC and/or any officer, vice principal or agent of UWMC pursuant to RCW 49.52.050 and 49.52.070 to recover these unpaid wages.

## VI. WHISTLEBLOWER PROTECTION

62. Ms. Garcia violated RCW 42.52.140 by accepting an improper gift from a patient of the clinic.

63. Specifically, in or around April 2019, Ms. Garcia accepted approximately 20 lbs. of deer and elk meat (valued at over $400) from "J.D.", a Montana patient with traumatic brain injury. Ms. Garcia also discussed going on a hunting trip in Montana with J.D. (valued at over $2,000).

64. Ms. Spokoiny immediately reported this violation and breach of ethics to Ms. Sarabia, who not only failed to take any further action by reporting to her superiors but gave express permission to Ms. Garcia to personally keep the deer and elk meat, when the gift should have been turned over to the university per applicable ethics rules.

COMPLAINT - 11

**Larry S. Spokoiny, Esq.**
4306 245th Avenue SE
Sammamish, Washington 98029
Telephone: (425) 503-3949
Facsimile:  (425) 313-0118

65. Based on the facts set forth above, UWMC retaliated against Ms. Spokoiny for reporting this ethical violation, given that Ms. Sarabia allowed the very person she complained about (Ms. Garcia) to insert false statements to deliberately lower the score of Ms. Spokoiny's annual performance review.

66. Ms. Spokoiny faced similar retaliation after she reported overtime abuse by her managers and other coworkers.

### VII.   RETALIATION

67. Ms. Spokoiny was singled out for punishment in direct retaliation for requesting disability accommodation.

68. Ms. Spokoiny was singled out for punishment in direct retaliation for suffering a workplace injury.

69. Ms. Spokoiny was singled out for punishment in direct retaliation for complaining about sexual harassment.

70. Ms. Spokoiny was singled out for punishment in direct retaliation for acting as a whistleblower.

71. Ms. Spokoiny was singled out for punishment in direct retaliation for demanding unpaid wages (including 4-1/2 years of missed rest breaks).

72. Ms. Spokoiny was singled out for punishment in direct retaliation for exercising her Weingarten rights.

73. Upon information and belief, the retaliatory actions of Ms. Sarabia, Ms. Garcia, Ms. Bagdasarian, Ms. Keeney and other UWMC personnel were taken with the deliberate intention of destroying Ms. Spokoiny's stellar and distinguished reputation within the UWMC and local medical community, most likely to cover up their own malfeasance in this and other matters.

COMPLAINT - 12

Larry S. Spokoiny, Esq.
4306 245th Avenue SE
Sammamish, Washington 98029
Telephone: (425) 503-3949
Facsimile:  (425) 313-0118

## CAUSES OF ACTION

I.  **Disparate Treatment under Title VII of the Civil Rights Act of 1964.**

II. **Retaliation under Title VII of the Civil Rights Act of 1964.**

III. **Disparate Treatment under Title IX of the Education Amendments of 1972.**

IV. **Retaliation under Title IX of the Education Amendments of 1972.**

V.  **Disparate Treatment under the Washington Law Against Discrimination.**

VI. **Retaliation under the Washington Law Against Discrimination.**

VII. **Failure to Accommodate under the Washington Law Against Discrimination.**

VIII. **Disparate Treatment, Failure to Accommodate and Retaliation under the Americans with Disabilities Act (ADA).**

IX. **Unpaid Wages for Denial of Preceptor Pay and Rest Breaks under State Law.**

(Plaintiff expressly reserves the right to supplement her claims as necessary)

## RELIEF SOUGHT

As a direct and proximate result of the aforesaid liability of the employer, the plaintiff sustained economic loss as well as severe, permanent and disabling injuries which continue to cause her pain and discomfort and thus are believed for purposes of these pleadings to be permanent, causing her pain and suffering in the past and continuing into the future, together with the necessity of medical and other health care treatments in the past and believed to be continuing into the future, all to her general and special damages in an amount which will be shown at time of trial and for which plaintiff seeks fair and adequate compensation.

WHEREFORE, plaintiff prays for judgment against the employer, in an amount which will fairly and adequately compensate her for her injuries and damages, both general and special, which amount will be shown at time of hearing, together with her costs and disbursements hereinafter to be taxed, and for such other and further relief as the Court deems just and equitable.

COMPLAINT - 13

Larry S. Spokoiny, Esq.
4306 245th Avenue SE
Sammamish, Washington 98029
Telephone: (425) 503-3949
Facsimile: (425) 313-0118

SUBMITTED this 29th day of December, 2021.

LARRY S. SPOKOINY, ESQ.


By: __see signature page attached_____

Larry Spokoiny, WSBA # 20274

Attorney for Plaintiff

COMPLAINT - 14

**Larry S. Spokoiny, Esq.**
4306 245th Avenue SE
Sammamish, Washington 98029
Telephone: (425) 503-3949
Facsimile:  (425) 313-0118