UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELIZABETH SPOKOINY,

                  Plaintiff,

    v.

UNIVERSITY OF WASHINGTON
MEDICAL CENTER,

                  Defendant.

CASE NO. C22-0536JLR

ORDER

## I.  INTRODUCTION

Before the court is Defendant University of Washington Medical Center's ("UWMC") motion for summary judgment.  (Mot. (Dkt. # 12); Reply (Dkt. # 25).) Plaintiff Elizabeth Spokoiny opposes the motion.  (Resp. (Dkt. # 23).)  The court has

//

//

//

1   considered the parties' submissions, the relevant portions of the record, and the governing

2   law.  Being fully advised,[1] the court GRANTS UWMC's motion.

## II.  BACKGROUND

4         This case arises out of Ms. Spokoiny's employment as a registered nurse at

5   UWMC from August 2015 through December 2020.  (Am. Compl. (Dkt. # 2-7) ¶ 2.)  It

6   was Ms. Spokoiny's first full-time nursing job, and she was simultaneously pursuing a

7   doctorate of nursing practice ("DNP") degree.  (*See* Freeman Decl. (Dkt. # 13) ¶ 3(C),

8   Ex. 3 ("Spokoiny Dep.") at 37:12-24.)  Ms. Spokoiny describes herself as a hard worker

9   and proudly proclaims that she earned "distinguished performance reviews" after her first

10  four years at UWMC.  (Am. Compl. ¶ 37.)  As Ms. Spokoiny was approaching the final

11  semester of her DNP program, however, her supervisors at UWMC noticed that she had

12  been doing schoolwork during scheduled shifts, arrived late to work several times, and

13  was not meeting performance expectations, including by failing to stay in designated

14  clinic areas and ensure that patients were prepared for their procedures.  (Bagdasarian

15  Decl. (Dkt. # 18) ¶ 5, Ex. 2 ("Formal Action Plan") at DEF_000410.)  In early December

16  2019, an assistant clinic director met with a UWMC human resources consultant, Ms.

17  Spokoiny's union representative, and Ms. Spokoiny to discuss these issues.  (Bagdasarian

18  Decl. ¶ 5.)  The assistant clinic director drafted a "potential Action Plan outlining

19  expectations for performance in [Ms. Spokoiny's] role," but ultimately "the Action Plan

20  //

21         [1] Neither party requests oral argument (*see* Mot. at 1; Resp. at 1), and the court

22  concludes that oral argument would not be helpful to its disposition of UWMC's motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

was never implemented" and management "never moved forward with any corrective

action." (*Id.  See generally* Formal Action Plan.)  The following month, in January 2020,

Ms. Spokoiny received her lowest performance rating at UWMC:  "2 – Successful."

(Bagdasarian Decl. ¶ 9, Ex. 5 ("Performance Review") at DEF_001976; *see also* Resp. at

10; Am. Compl. ¶¶ 37-38.)[2]  Ms. Spokoiny claims to have never received less than a

"distinguished" 2.75 until then.  (Resp. at 10.)

    Ms. Spokoiny continued working at UWMC for almost another year.  (*See* Gould

Decl. (Dkt. # 15) ¶ 16.)  During that time, she earned her DNP degree, sat for her board

exam, and applied for positions at other clinics before ultimately resigning from UWMC

without notice in December of 2020.  (*See id.*; Spokoiny Dep. at 37:21-25, 38:21-39:5,

186:18-25.)  Since leaving UWMC, Ms. Spokoiny has worked for several private clinics

and just recently returned to the University of Washington School of Medicine as a nurse

practitioner.  (Spokoiny Dep. at 186:18-25.)

    To this day, however, Ms. Spokoiny maintains that her January 2020 performance

review was "tainted" and that her former supervisors at UWMC gave her a low score in

retaliation for a myriad of incidents that occurred in the year prior.  (Resp. at 15.)  Ms.

Spokoiny alleges that her supervisors "manipulated" her review and that the meeting

preceding it was an "arbitrary and capricious" "sham" designed to "force [her] to resign

and forego her . . . employment rights."  (Am. Compl. ¶¶ 34, 37.)  According to Ms.

//

---

[2]  Ms. Spokoiny's "Calculated Rating" was a 1.5, indicating that she "need[ed]
improvement" in certain areas, but it appears her manager gave her an overall rating of 2 out of
3.  (*See* Performance Review at DEF_001976.)

ORDER - 3

1  Spokoiny, her review contained "zero truthful comments related to clinical competency at

2  which [she] excels" and was "direct retaliation" for:  (1) "requesting disability

3  accommodation";[3] (2) "suffering a workplace injury"; (3) "complaining about sexual

4  harassment"; (4) "acting as a whistleblower"; (5) "demanding unpaid wages"; and

5  (6) "exercising her *Weingarten* rights."[4]  (*Id.* ¶¶ 37, 67-73.)

6         Ms. Spokoiny filed her initial complaint on December 29, 2021 (Compl. (Dkt.

7  # 1-1)) and amended her complaint on March 25, 2022 (Am. Compl.).  She lists ten

8  causes of action in her amended complaint, including claims for disparate treatment

9  under Title VII of the Civil Rights Act of 1964 ("Title VII"), Title IX of the Education

10 Amendments of 1972 ("Title IX"), the Washington Law Against Discrimination

11 ("WLAD"), and the Americans with Disabilities Act ("ADA"); retaliation under Title

12 VII, Title IX, WLAD, and the ADA; failure to accommodate under WLAD and the

13 ADA; unpaid wages; and violation of Washington's Public Records Act ("PRA"), RCW

14 42.56.[5]  (Am. Compl. at 14 ("Causes of Action" list).)  In addition, Ms. Spokoiny

15

16       [3]  Ms. Spokoiny has a vision disability and used a sit/stand desk at UWMC for medical
17 reasons.  (Am. Compl. ¶¶ 4, 45.)  She also received Family and Medical Leave Act ("FMLA")
   leave while working at UWMC.  (*See id.* ¶¶ 55-56.)

18       [4]  *See NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 267 (1975) (holding employees have
   the right to union representation at investigatory interviews that may result in disciplinary
19 action).

20       [5]  Ms. Spokoiny included her PRA claim only in her amended complaint.  (*See generally*
   Compl.  *See* Am. Compl. ¶¶ 74-83.)  UWMC argues that Ms. Spokoiny never served her
21 amended complaint (Mot. at 24), but Ms. Spokoiny responds that she served it nearly a month
   before UWMC removed the case to this court (Resp. at 2 (citing L. Spokoiny Decl. (Dkt. # 22)
22 ¶ 2, Ex. 1 (email correspondence between Ms. Spokoiny's counsel and the Washington Attorney
   General's Office regarding electronic service of the amended complaint)).).  UWMC does not

ORDER - 4

1    includes in her amended complaint sections titled "Sexual Harassment," "Worker's

2    Compensation," "Family Medical Leave Act," and "Whistleblower Protection" (*see id.*

3    ¶¶ 48-56, 62-66), but does not list corresponding claims among her causes of action (*see*

4    *id.* at 14).

5        The court first sets forth the legal standard for evaluating summary judgment

6    motions before addressing each of Ms. Spokoiny's claims.

7                        **III.  LEGAL STANDARD**

8        Summary judgment is appropriate if the evidence viewed in the light most

9    favorable to the non-moving party shows "that there is no genuine dispute as to any

10   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

11   56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if it

12   might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

13   (1986).  A factual dispute is "'genuine' only if there is sufficient evidence for a

14   reasonable fact finder to find for the non-moving party."  *Far Out Prods., Inc. v. Oskar*,

15   247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

16       The moving party bears the initial burden of showing there is no genuine dispute

17   of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at

18   323.  If the moving party does not bear the ultimate burden of persuasion at trial, it can

19   show the absence of such a dispute in two ways:  (1) by producing evidence negating an

20   essential element of the nonmoving party's case, or (2) by showing that the nonmoving

21

22   address this argument in its reply brief.  (*See generally* Reply.)  Accordingly, the court will
     consider the merits of Ms. Spokoiny's PRA claim.

1   party lacks evidence of an essential element of its claim or defense.  *Nissan Fire &*

2   *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party

3   meets its burden of production, the burden then shifts to the nonmoving party to identify

4   specific facts from which a factfinder could reasonably find in the nonmoving party's

5   favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

## IV.  ANALYSIS

7   The court considers Ms. Spokoiny's claims in the order presented in UWMC's

8   motion.

## A.   Sexual Harassment

10   Ms. Spokoiny's amended complaint is not a model of clarity.  She does not

11   include sexual harassment in her list of causes of action (*see* Am. Compl. at 14), and the

12   "Sexual Harassment" section of her complaint fails to identify any statutory basis for a

13   sexual harassment claim (*see id.* ¶¶ 48-52).  UWMC argues that Ms. Spokoiny appears to

14   plead that UWMC retaliated against her for reporting sexual harassment, not that UWMC

15   is liable for sexual harassment.  (*See id.* ¶ 52; Mot. at 7.)  Nevertheless, Ms. Spokoiny

16   argues that she has presented a *prima facie* case "under state and federal law of sexual

17   harassment" (Resp. at 1), and UWMC addresses this claim on the merits (*see* Mot. at

18   7-9).  The court therefore construes Ms. Spokoiny's amended complaint as alleging a

19   sexual harassment claim.

20   To prevail on a sexual harassment claim under Title VII, the plaintiff must show

21   that (1) she "was subjected to a hostile work environment," and (2) her employer "was

22   liable for the harassment that caused the hostile environment to exist."  *Fried v. Wynn*

*Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021).  The first element requires the plaintiff to prove that (1) she "was subjected to verbal or physical conduct of a sexual nature," (2) "the conduct was unwelcome," and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment."  *Id.*  The second element is satisfied if the employer failed "to take immediate and corrective action in response to a coworker's or third party's sexual harassment" that it "knew or should have known about."  *Id.* (collecting cases). Similarly, under the WLAD, the plaintiff must show that "(1) the harassment was unwelcome; (2) the harassment was because of sex; (3) the harassment affected the terms or conditions of employment; and (4) the harassment is imputed to the employer." *Estevez v. Fac. Club of the Univ. of Wash.*, 120 P.3d 579, 588 (Wash. Ct. App. 2005) (internal quotation marks omitted) (quoting *Coville v. Cobarc Servs., Inc.*, 869 P.2d 1103, 1105 (Wash. Ct. App. 1994)).  Harassment is "imputed to the employer" if it "authorized, knew, or should have known of the harassment and . . . failed to take reasonably prompt and adequate corrective action."  *Glasgow v. Georgia-Pacific Corp.*, 693 P.2d 708, 712 (Wash. 1985).

Although Ms. Spokoiny has produced evidence that UWMC employee Cooper Wilhelm subjected her to unwelcome conduct of a sexual nature (*see, e.g.*, 1st Spokoiny Decl. (Dkt. # 21) ¶¶ 16, 38 (describing that conduct)), she has not met her burden to show that UWMC failed to take reasonably prompt and adequate corrective action after learning about the conduct. *See Fried*, 18 F.4th at 647.  To the contrary, the undisputed evidence in the record shows that Ms. Spokoiny first reported Mr. Wilhelm's unwelcome

1    sex-based conduct to UWMC management in late August or early September 2019, when

2    she informed her manager that Mr. Wilhelm put "his hand on [her] back and said: 'I can

3    see through your clothes.  Don't you care?'" (1st Spokoiny Decl. ¶¶ 38-39; *see also*

4    (Petritz Decl. (Dkt. # 16) ¶ 14 (confirming that Ms. Spokoiny had not reported an earlier

5    comment by Mr. Wilhelm).  *See generally* Resp. (directing the court to no evidence that

6    Ms. Spokoiny reported the earlier comment or any other alleged sex-based conduct by

7    Mr. Wilhelm).)  Ms. Spokoiny's manager immediately reported the comment to Mr.

8    Wilhelm's manager, who then "immediately addressed" it with Mr. Wilhelm.  (Petritz

9    Decl. ¶ 14.)  Mr. Wilhelm resigned that same day and never worked with Ms. Spokoiny

10   again.  (*See id.*; Spokoiny Dep. at 168:17-169:15; 1st Spokoiny Decl. ¶ 41.)  Although

11   Ms. Spokoiny also refers to a July 2019 "mediation meeting" that her managers allegedly

12   "forced" her to attend with Mr. Wilhelm, she does not cite any evidence that she reported

13   any sex-based conduct by Mr. Wilhelm (as opposed to bullying) before that meeting, and

14   an email she sent shortly after the meeting includes no references to sexual harassment or

15   sexual conduct.  (Resp. at 4; *see* Waldhausen Decl. (Dkt. # 20) ¶ 6, Ex. 2, at 6-7

16   (discussing concerns about bullying and group dynamics).)  Finally, Ms. Spokoiny asserts

17   that she "was forced" to watch Mr. Wilhelm's wrestling videos, which had "sexual

18   overtones" (Res. at 2), but does not point the court to any evidence that UWMC was or

19   should have been aware of this conduct (*see generally id.*).

20        Thus, because Ms. Spokoiny has not met her burden to present evidence that

21   would allow a reasonable factfinder to conclude that UWMC failed to take immediate

22   corrective action after learning of unwelcome sex-based conduct, the court grants

1   UWMC's motion for summary judgment on Ms. Spokoiny's hostile work environment

2   sexual harassment claims.

3   **B.    Disparate Treatment**

4        Although her pleadings are again unclear, Ms. Spokoiny appears to allege that

5   UWMC discriminated against her on the basis of disability[6] in violation of Title VII, Title

6   IX, WLAD, and the ADA by giving her a low performance review in January 2020 and

7   by denying her requests for accommodations and FMLA leave.  (*See, e.g.*, Am. Compl.

8   ¶¶ 47, 54, 56; *id.* at 14; Resp. at 6 (citing Spokoiny Dep. at 155:9-156:4).)  She asserts

9   that the court must deny UWMC's motion for summary judgment on her disparate

10  treatment claims because she has presented a *prima facie* case of disability

11  discrimination.  (Resp. at 1.)  The court disagrees.

12       Disparate treatment claims under federal and state law are governed by the

13  *McDonnell Douglas* burden-shifting framework.  *See Curley v. City of N. Las Vegas*, 772

14  F.3d 629, 632 (9th Cir. 2014) (ADA); *Hines v. Todd Pac. Shipyards*, 112 P.3d 522, 529

15  (Wash. Ct. App.  2005) (WLAD); *see also McDonnell Douglas Corp. v. Green*, 411 U.S.

16  792, 802 (1973).[7]  The WLAD largely mirrors federal law, and courts "look to

17

18       [6] Ms. Spokoiny does not respond to UWMC's argument that she has only identified
    disability as a basis for her disparate treatment claim.  (*See* Mot. at 10 (citing Am. Compl.));
19  Resp. at 1 (referring only to discrimination on the basis of disability).)  In addition, the
    complaint's sole mention of discrimination on any ground other than disability appears within its
20  discussion of alleged sexual harassment.  (*See* Am. Compl. ¶ 52 (alleging UWMC discriminated
    "on the basis of sex" by "allowing [Mr.] Wilhelm's harassment to continue unabated").)  The
    court therefore concludes that Ms. Spokoiny's disparate treatment claims are based only on
21  disability.

22       [7] Claims for disability discrimination in employment are not actionable under Title VII
    (*see* 42 U.S.C. § 2000e-2(a)(1)) and Ms. Spokoiny refers to Title IX in her response only in the

1    interpretations of federal anti-discrimination laws . . . when applying the WLAD." *See*

2    *Grill v. Costco Wholesale Corp.*, 312 F. Supp. 2d 1349, 1354 (W.D. Wash. 2004).  Under

3    the burden-shifting framework, the plaintiff must first establish a *prima facie* case of

4    discrimination.  *Curley*, 772 F.3d at 632.  The plaintiff may establish a *prima facie* case

5    either by offering direct evidence of discrimination or by showing that (1) she is disabled;

6    (2) she is doing satisfactory work; (3) she suffered an adverse employment action; and (4)

7    similarly situated non-disabled individuals were treated more favorably or that other

8    circumstances raise a reasonable inference of unlawful discrimination.  *McElwain v.*

9    *Boeing Co.*, 244 F. Supp. 3d 1093, 1097-98 (W.D. Wash. 2017) (citing *Callahan v. Walla*

10    *Walla Hous. Auth.*, 110 P.3d 782, 786 (Wash. Ct. App. 2005)).  If the plaintiff succeeds

11    in making out a *prima facie* case, then the burden shifts to the defendant to offer a

12    legitimate nondiscriminatory explanation for its actions.  *Curley*, 772 F.3d at 632.  If the

13    defendant does so, the burden shifts back to the plaintiff to show that the defendant's

14    explanation is pretext for discrimination.  *Id.*

15         Ms. Spokoiny has not identified any direct evidence of UWMC's intent to

16    discriminate against her on the basis of disability.  (*See generally* Resp.)  She points to a

17    December 15, 2019 email in which she asserts that her supervisor "admitted in writing

18    that the main reason she gave Ms. Spokoiny a very low performance review was due to

19    'health issues.'"  (*Id.* at 11 (citing 2nd Spokoiny Decl. (Dkt. # 24) ¶ 20, Ex. 4 ("Sarabia

20    //

21

22    context of gender discrimination (*see* Resp. at 7).  Therefore, the court grants UWMC's motion for summary judgment to the extent Ms. Spokoiny alleges disability discrimination claims under Title VII and Title IX.

1    Email" at 1).)  Ms. Spokoiny's characterization of this email, however, is untenable.  Ms.

2    Spokoiny's supervisor actually wrote that it was *Ms. Spokoiny*, rather than the supervisor,

3    who "attribute[d] her behaviors or missteps in work performance to her stressors," which

4    included "health issues, work related stressors, familial, school-related stressors, and

5    personal issues."  (Sarabia Email at 1.)  No reasonable factfinder could conclude that this

6    email is direct evidence of UWMC's discriminatory intent.

7         Because Ms. Spokoiny has not identified direct evidence of discrimination on the

8    basis of disability, the court applies the *McDonnell Douglas* framework in evaluating her

9    claims.  *See McElwain*, 244 F. Supp. 3d at 1097-98.  As discussed below, the court

10   concludes that summary judgment in UWMC's favor is warranted because, even

11   assuming Ms. Spokoiny belongs to a protected class within the meaning of WLAD and

12   federal law, and even assuming she was performing in accordance with UWMC's

13   expectations, she does not raise a genuine issue as to the third and fourth elements of the

14   *prima facie* case.  Specifically, Ms. Spokoiny has failed to direct the court toward

15   "specific facts" that would support a finding that UWMC took an adverse employment

16   action against her or that the circumstances surrounding that action raise a reasonable

17   inference of unlawful discrimination.  *Celotex*, 477 U.S. at 324; *see McElwain*, 244 F.

18   Supp. 3d at 1097-98.

19        Regarding the third element of the *prima facie* case, the court agrees with UWMC

20   that Ms. Spokoiny has not raised a genuine issue as to whether UWMC subjected her to a

21   cognizable adverse employment action, defined as one that "materially affects the

22   compensation, terms, conditions, or privileges of employment."  *Campbell v. Haw. Dep't*

*of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018) (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)).  First, Ms. Spokoiny asserts that the January 2020 performance evaluation was an adverse employment action.  (Resp. at 9.)  However, "a negative performance review, without more, does not constitute an adverse employment action" in the context of a disparate treatment claim.  *Bryant v. Covina-Valley Unified Sch. Dist.*, No. CV 17-1274 PSG (AJWx), 2017 WL 10543559, at *5 (C.D. Cal. Oct. 16, 2017) (collecting cases).

Second, Ms. Spokoiny asserts that she suffered an adverse action because "her FMLA was interfered with and accommodations delayed or denied."  (Resp. at 9-10.) She does not, however, cite any specific examples of UWMC denying a request for FMLA or accommodation, nor does she rebut UWMC's evidence that it never denied such requests.  (*See generally id.  See also* Garman Decl. (Dkt. # 14) ¶ 15 ("I am not aware of any circumstances in which [Ms. Spokoiny] was denied FMLA leave or accommodation.").)  To the contrary, Ms. Spokoiny acknowledges that UWMC provided several requested accommodations, including an alternative keyboard, document camera, sit-stand desk, magnifier, and intermittent leave.  (Spokoiny Dep. at 82:17-20.)

Third, Ms. Spokoiny points to two purported adverse employment actions in her response brief that she did not raise in her complaint.  She first argues that management tried to "force" her to quit by encouraging her to resign to avoid being placed on an action plan.  (Resp. at 11 (citing 2d Spokoiny Decl. ¶ 21, Ex. 5 ("Davey Emails") at 1).)  Ms. Spokoiny relies, however, on an email thread that was initiated in response to her own query about the resignation process.  (*See* Davey Emails at 3.)  Ms. Spokoiny next

1    asserts that a supervisor "attempted to reassign [her] from a nursing job to a

2    housekeeping role." (Resp. at 11.)  But nothing in the record suggests that Ms. Spokoiny

3    was ever actually demoted or reassigned to housekeeping.  (*See generally id.* (citing no

4    evidence supporting a finding that Ms. Spokoiny was reassigned).)  The court therefore

5    concludes that Ms. Spokoiny has failed to meet her burden to establish the third element

6    of a *prima facie* disparate treatment claim.

7           Ms. Spokoiny also fails to satisfy the fourth element of the *prima facie* case

8    because she has neither provided evidence that similarly situated employees were treated

9    more favorably than she was nor shown that other circumstances give rise to an inference

10   of discrimination.  (*See generally id.*)  Ms. Spokoiny identifies no evidence that UWMC

11   treated any non-disabled individual who had a similar job and engaged in similar conduct

12   more favorably.  *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003)

13   Although she contends that "no other nurse received an annual performance review score

14   lower than 2.25" (Resp. at 10 (citing L. Spokoiny Decl. ¶ 5, Ex. 4 ("Evaluations"))), she

15   fails to identify any nondisabled nurses who received higher scores despite engaging in

16   conduct similar to that which led to her lower score.  *See Vasquez*, 349 F.3d at 641.  Ms.

17   Spokoiny has not identified any other evidence from which a reasonable factfinder could

18   infer that UWMC subjected her to discrimination on the basis of her disability.  (*See*

19   *generally* Resp.)

20          In sum, Ms. Spokoiny has failed to establish a *prima facie* case of disparate

21   treatment on the basis of disability.  Ms. Spokoiny does not offer any direct evidence of

22   UWMC's alleged discriminatory intent, and she fails to provide evidence sufficient to

1   meet her initial burden under the *McDonnell Douglas* framework to establish a *prima*

2   *facie* case of disability discrimination.  UWMC is therefore entitled to summary

3   judgment on these claims.

4   **C.    Retaliation**

5       Ms. Spokoiny alleges that UWMC "singled [her] out for punishment in direct

6   retaliation" for the following:  (1) "requesting disability accommodation"; (2) "suffering

7   a workplace injury"; (3) "complaining about sexual harassment"; (4) "acting as a

8   whistleblower"; (5) "demanding unpaid wages"; and (6) "exercising her *Weingarten*

9   rights."  (Am. Compl. ¶¶ 67-73.)  In response to UWMC's motion for summary judgment

10  on her retaliation claims, however, Ms. Spokoiny appears to identify only two actions for

11  which UWMC allegedly retaliated against her: "filing the sexual harassment complaint

12  against Mr. Wilhelm" and "taking advantage of FMLA to deal with her disabilities."

13  (*See* Resp. at 6.)  Ms. Spokoiny asserts that UWMC retaliated against her by (1) issuing

14  the January 2020 performance review, (2) "orchestrating [a] secret meeting, which

15  occurred the same day Mr. Wilhelm resigned," (3) interfering with her FMLA requests,

16  and (4) delaying or denying her requests for accommodations.  (*Id.* at 5, 10.)  The court

17  concludes that Ms. Spokoiny fails to raise a triable issue as to her retaliation claims.

18      Like disparate treatment claims under WLAD, "a plaintiff may defeat summary

19  judgment in a retaliation claim with direct evidence or through the *McDonnell Douglas*

20  burden shifting scheme."  *Houserman v. Comtech Telecomms. Corp.*, No. C19-0644RAJ,

21  2020 WL 7773417, at *8 (W.D. Wash. Dec. 30, 2020).  Under both state and federal law,

22  a *prima facie* case of retaliation requires proof that the plaintiff (1) "engaged in a

ORDER - 14

1    protected activity," (2) "suffered an adverse action," and (3) can establish "a causal

2    connection between the protected activity and the adverse action." *Brzycki v.*

3    *Harborview Med. Ctr.*, No. C18-1582MJP, 2020 WL 1237154, at *7 (W.D. Wash. Mar.

4    13, 2020) (citing *Vasquez*, 349 F.3d at 646).  In the retaliation context, an adverse action

5    "consists of conduct which would dissuade a reasonable worker from engaging in

6    protected activity." *Id.* (citing *BNSF Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

7            Again, Ms. Spokoiny has come forward with no direct evidence in support of her

8    claims.  (*See generally* Resp.)  Accordingly, she must satisfy her burden under the

9    *McDonnell Douglas* framework.  The court concludes that summary judgment is

10   appropriate because, even assuming that Ms. Spokoiny has shown a genuine issue of

11   material fact regarding whether she engaged in protected activity and whether UWMC

12   subjected her to an adverse employment action, she has failed to demonstrate any causal

13   relationship between her protected activity and UWMC's actions.

14           The court assumes, without deciding, that Ms. Spokoiny's complaint about Mr.

15   Wilhelm's alleged sexual harassment and requests for FMLA to accommodate her

16   disability constituted protected activity.  (*See generally* Resp.; Reply.  *See* 1st Spokoiny

17   Decl. ¶ 41.)  The court also assumes, without deciding, that the January 2020

18   performance review was an adverse employment action.[8]  *See Hooks v. Works*, 14 F.

19   App'x 769, 772 (9th Cir. 2001) ("A negative performance evaluation may constitute an

20

21   ───────────────
     [8] Ms. Spokoiny fails to explain how or why the "secret meeting" was an adverse
     employment action (*see generally* Resp.), and, as discussed above, Ms. Spokoiny does not cite
22   any specific examples of UWMC denying a request for FMLA or accommodation and fails to
     rebut UWMC's evidence that it did not, *see supra* § IV(B).

1  adverse employment action." (citing *Kortan v. Cal. Youth. Auth.*, 217 F.3d 1104, 1112

2  (9th Cir. 2000)).

3        Ms. Spokoiny falls short, however, of satisfying the causation element of her

4  *prima facie* case.  Indeed, she does not address causation in her brief.  (*See generally*

5  Resp. (no discussion of causal connection).)  In any event, the causation element requires

6  Ms. Spokoiny to present "evidence sufficient to raise the inference that protected activity

7  was the likely reason" for the adverse actions.  *Davis v. Team Elec. Co.*, 520 F.3d 1080,

8  1984 (9th Cir. 2008).  This she has failed to do.  Simply put, Ms. Spokoiny has directed

9  the court to no evidence from which a reasonable juror could find a causal connection

10  between her protected activities and her performance review.  (*See generally* Resp.)  *See,*

11  *e.g.*, *Martinez-Patterson v. AT&T Servs. Inc.*, No. C18-1180RSM, 2021 WL 3617179, at

12  *10 (W.D. Wash. Aug. 16, 2021) ("Plaintiff's mere belief that her ratings . . . were

13  motivated by retaliatory animus do not establish a causal connection between the

14  protected activities and her ratings  . . . .").  Because Ms. Spokoiny has not met her

15  burden to demonstrate a causal connection between the protected activities she undertook

16  and the adverse employment action she allegedly suffered, the court need not consider the

17  remaining steps of the *McDonnell Douglas* framework.  UWMC is entitled to summary

18  judgment on Ms. Spokoiny's retaliation claims.

19  **D.    Whistleblowing**

20        In the "Whistleblower Protection" section of her amended complaint, Ms.

21  Spokoiny alleges that UWMC retaliated against her after she reported a coworker for a

22  possible ethics violation in accepting "approximately 20 lbs of deer and elk meat" from a

1   Montana patient.  (Am. Compl. ¶ 63.)  UWMC argues this claim should be dismissed

2   because the undisputed facts show that Ms. Spokoiny did not report the alleged violation

3   until a year after it occurred and months after UWMC issued the January 2020

4   performance evaluation.  (Mot. at 18-19.)  Ms. Spokoiny neither responds to this

5   argument nor directs the court toward any evidence or legal authority supporting a claim

6   for whistleblower protection.  (*See generally* Resp.)  UWMC is therefore entitled to

7   summary judgment on this claim.

8   **E.    Failure to Accommodate**

9         Ms. Spokoiny alleges that UWMC violated the WLAD and ADA by delaying or

10  denying her requests for accommodations.  (Am. Compl. ¶¶ 45-47; *see id.* at 14.)

11        The "basic requirements" of a failure to accommodate claim under WLAD and the

12  ADA "are essentially the same."  *McElwain*, 244 F. Supp. 3d at 1098  (quoting

13  *McDaniels v. Grp. Health Co-op*, 57 F. Supp. 3d 1300, 1314 (W.D. Wash. 2014)).  Both

14  statutes require the plaintiff to show that (1) she is disabled, (2) she is qualified for the

15  job in question and capable of performing it with reasonable accommodation; (3) the

16  employer had notice of her disability; and (4) the employer failed to reasonably

17  accommodate the disability.  *Id.* at 1098-99.  "Reasonable accommodation . . . envisions

18  an exchange between employer and employee where each seeks and shares information

19  to achieve the best match between the employee's capabilities and available positions."

20  *Goodman v. Boeing Co.*, 899 P.2d 1265, 1269-70 (Wash. 1995).  But "[t]he employee, of

21  course, retains a duty to cooperate with the employer's efforts by explaining her disability

22  and qualifications."  *Id.* at 1269.

1    Ms. Spokoiny alleges that although she was "entitled to a special [sit/stand] desk,"

2    "her managers routinely forced her to work in an area without providing such

3    accommodations." (Am. Compl. ¶ 45.)  She further asserts that she "was informed an

4    update to her accommodations would be made" but "the meeting was cancelled and she

5    was denied the opportunity to update her current needs." (*Id.* ¶ 46.)

6    UWMC does not dispute Ms. Spokoiny's disability status or qualifications but

7    argues that it provided her with the accommodations she requested.  (*See* Mot. at 20

8    (describing a "desk, document camera/magnifier, keyboard, s[]it/stand desk, medical

9    device for migraines, [and] intermittent leave" (citing Spokoiny Dep. at 82:14-20)).)  Ms.

10   Spokoiny does not respond to the substance of UWMC's argument.  (*See generally*

11   Resp.)  Although she contends, in the first sentence of her opposition brief, that she

12   presents a *prima facie* case for "failure to accommodate under ADA" (*id.* at 1), she never

13   expressly addresses her failure to accommodate claim (*see generally id.*).  Ms. Spokoiny

14   makes conclusory statements, in the context of her discussion of her discrimination and

15   retaliation claims, that her accommodations were "delayed or denied" and quotes notes

16   from her own interview in support of that contention.  (*See id.* at 10.)  Ms. Spokoiny does

17   not, however, point the court toward evidence from which a reasonable factfinder could

18   conclude that she ever made a request for accommodations that UWMC denied.  (*See*

19   *generally id.  See* Garman Decl. ¶ 15 ("I am not aware of any circumstances in which

20   [Ms. Spokoiny] was denied . . . accommodation.")); *see also Wells v. Mut. of Enumclaw*,

21   244 F. App'x 790, 792 (9th Cir. 2007) (affirming grant of summary judgment after the

22   plaintiff failed to "request[] an accommodation").  Because Ms. Spokoiny has failed to

1    provide evidence that UWMC failed to reasonably accommodate her disability, UWMC

2    is entitled to summary judgment on these claims.

3    **F.    Workers' Compensation Retaliation and Discrimination**

4            Ms. Spokoiny asserts that UWMC retaliated and discriminated against her for

5    having a workers' compensation claim related to an on-the-job injury "by routinely and

6    systematically denying her requests for time off despite [her FMLA] certification." (Am.

7    Compl. ¶¶ 53-54.)  UWMC argues that that Ms. Spokoiny "should not be permitted to

8    proceed on a worker's compensation retaliation/discrimination claim" because "[n]o

9    evidence suggests any animus toward [Ms.] Spokoiny for filing a workers' compensation

10   claim with the State." (Mot. at 21-22 (capitalization altered).)  Ms. Spokoiny does not

11   respond to this argument and fails to direct the court toward any evidence in support of

12   any claim concerning workers' compensation.  (*See generally* Resp. (no mention of

13   workers' compensation).)  UWMC is therefore entitled to summary judgment on these

14   claims.

15   **G.    FMLA Interference**

16           Ms. Spokoiny alleges that "UWMC . . . interfered with her FMLA claim by

17   routinely and systematically denying her requests for time off." (Am. Compl. ¶¶ 55-56.)

18   Like her hostile work environment sexual harassment claims, Ms. Spokoiny does not

19   include claims for FMLA interference in her causes of action. (*See id.* at 14.)  Again,

20   however, UWMC argues these claims on the merits (*see* Mot. at 22-23), and Ms.

21   Spokoiny asserts that she has presented a *prima facie* case of "FMLA interference"

22   //

1    (Resp. at 1).  The court therefore construes Ms. Spokoiny's amended complaint as

2    alleging a claim for FMLA interference.[9]

3         "The FMLA grants employees twelve weeks of unpaid leave for certain medical

4    reasons and requires employers to reinstate employees to the same or similar positions

5    after they return from 'such leave.'"  *Fiatoa v. Keala*, 191 F. App'x 551, 553 (9th Cir.

6    2006) (quoting 29 U.S.C. §§ 2612(a)(1), 2614(a)(1)).  Section 2615 of the FMLA makes

7    it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the

8    attempt to exercise" these rights.  29 U.S.C. § 2615(a)(1).

9         To establish a *prima facie* case of FMLA interference, the plaintiff must establish

10   that (1) she "was eligible for the FMLA's protections," (2) her "employer was covered by

11   the FMLA," (3) she "was entitled to leave under the FMLA," (4) she "provided sufficient

12   notice of [her] intent to take leave," and (5) the "employer denied [her] FMLA benefits to

13   which [s]he was entitled."  *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243

14   (9th Cir. 2004) (quoting *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)).

15        As discussed above, Ms. Spokoiny fails to direct the court toward any specific

16   instances of UWMC denying a request for FMLA leave.  *Supra* § IV(B).  (*See generally*

17   Resp.)  Ms. Spokoiny also fails to rebut UWMC's evidence that it never denied requests

18
19   _____
     [9] UWMC argues that it is entitled to summary judgment on any claims brought under
     Washington's Paid Family Leave Act ("PFMLA") (Mot. at 22-23 (citing RCW 50A.40.010)),
20   but Ms. Spokoiny did not assert a claim for PFMLA interference (*see* Am. Compl. at 14), nor did
     she even mention the PMFLA in her complaint or opposition brief (*see generally* Am. Compl.;
     Resp.).  Although the PFMLA "mirrors its federal counterpart," *Mooney v. Roller Bearing Co. of*
21   *Am., Inc.*, No. C20-1030LK, 2022 WL 1014904, at *21 (W.D. Wash. Apr. 5, 2022) (quoting
     *Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1269 (W.D. Wash. 2013)), the court
     only addresses whether UWMC is entitled to summary judgment on Ms. Spokoiny's federal
22   FMLA claims.

1    for FMLA leave.  (*See generally* Resp.  *See* Garman Decl. ¶ 15.)  Accordingly, even

2    assuming Ms. Spokoiny has established the first four elements of her *prima facie* case for

3    FMLA interference, she does not raise a genuine issue as to the fifth element because she

4    has failed to direct the court toward "specific facts" that would support a finding that

5    UWMC denied her any benefits to which she was entitled under the FMLA.  *Celotex*, 477

6    U.S. at 324; *see McElwain*, 244 F. Supp. 3d at 1097-98.  UWMC is therefore entitled to

7    summary judgment on these claims.

8    **H.    Unpaid Wages**

9         Ms. Spokoiny alleges that UWMC violated RCW 49.52.050 and 49.52.070 by

10   failing to compensate her for missed meal breaks and unpaid preceptor pay.  (Am.

11   Compl. ¶¶ 57-61; *id.* at 14.)  She asserts that she was entitled to this pay pursuant to the

12   Washington State Nurses Association ("WSNA") union contract.  (*Id.* ¶¶ 58-59.)

13        "By their own terms, sections 49.52.050(2) and 49.52.070 . . . apply only where

14   the nonpayment of wages is conducted 'willfully and with intent to deprive the employee

15   of any part of [her] wages.'"  *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1050

16   (9th Cir. 1995) (quoting RCW 49.52.050(2)).  "[T]he nonpayment must be the result of

17   knowing and intentional action by the employer, rather than of a bona fide dispute as to

18   the obligation of payment."  *Edman v. Kindred Nursing Ctrs. W., LLC*, No.

19   C14-1280BJR, 2016 WL 6836884, at *11 (W.D. Wash. Nov. 21, 2016) (citing *Schilling*

20   *v. Radio Holdings, Inc.*, 961 P.2d 371, 375 (Wash. 1998)).  "Dismissal of such claims on

21   summary judgment is permitted when there is no evidence that the employer acted

22   willfully."  (*Id.*)

1    Ms. Spokoiny has not sustained her burden on summary judgment because she has

2    failed to present evidence suggesting that UWMC willfully withheld payment of her

3    wages.  Although UWMC policy required Ms. Spokoiny to document missed breaks and

4    lunches in UWMC's software program, and although Ms. Spokoiny's supervisor

5    "encouraged her to use the [program]" and gave her a toolkit with "guidelines for

6    recording missed lunches and breaks," Ms. Spokoiny did not enter any missed breaks or

7    lunches.  (Petritz Decl. ¶ 14; Spokoiny Dep. at 198:17-199:9 (acknowledging that she did

8    not document her breaks and lunches).)  Similarly, Ms. Spokoiny acknowledges that she

9    never recorded the time she worked as a preceptor and that she was never "officially

10   assigned to a preceptor role."  (*See* Spokoiny Dep. Ex. 30 at DEF_001995; *see* Spokoiny

11   Dep. at 336:14-2; *see also* Petritz Decl. ¶ 14 (stating that the clinic where Ms. Spokoiny

12   worked "was not using 'preceptors,' specifically defined by the WSNA Agreement")).

13   Ms. Spokoiny may have trained new employees (*see* 1st Spokoiny Decl. ¶ 46), but there

14   is no evidence she was "assigned in writing . . . as a Preceptor," a prerequisite to be

15   eligible for preceptor pay under the WSNA contract (Spokoiny Dep. Ex. 30 at

16   DEF_001994).

17        Accordingly, UWMC is entitled to summary judgment on Ms. Spokoiny's claims

18   under RCW 49.52.050 and 49.52.070 because she has presented no evidence from which

19   a reasonable factfinder could conclude that UWMC willfully withheld wages owed to

20   her.

21   //

22   //

1   **I.      Public Records Act**

2          Finally, Ms. Spokoiny asserts that UWMC has violated the PRA, RCW 42.56.

3   (Am. Compl. ¶¶ 74-83.)  Ms. Spokoiny filed public records requests related to her time at

4   UWMC on June 17, 2020, and April 1, 2021.  (Am. Compl. ¶¶ 74, 78.)  Ms. Spokoiny

5   believes that UWMC "intentionally delayed" responding to her requests, arguing the

6   "[e]vidence . . . shows that while documents responsive to" her requests "were fully

7   available by October 30, 2020 and . . . April 7, 2021, neither set of documents were

8   provided to [her] until August 2023 (i.e. more than 2 years later)."  (Resp. at 13.)  The

9   court concludes that the evidence falls short of raising a triable issue with respect to Ms.

10  Spokoiny's PRA claims.

11         Upon receiving a request for public records under the PRA, "the agency may

12  respond in one of three ways:  produce the records, ask for more time or clarification, or

13  deny the request along with a proper claim of exemption."  *Belenski v. Jefferson Cnty.*,

14  378 P.3d 176, 179 (Wash. 2016).  RCW 42.56.550 provides a cause of action for citizens

15  to challenge violations of the PRA.  When considering alleged violations of the PRA, the

16  proper inquiry is "[w]hether the agency responded with reasonable thoroughness and

17  diligence."  *Freedom Found. v. Dep't of Soc. & Health Servs.*, 445 P.3d 971, 981 (Wash.

18  Ct. App. 2019), *rev. denied*, 1 Wash. 3d 1011 (2023).  An agency is not bound to its

19  original estimate of the time it will take to respond to the request, and reasonableness

20  "must be based on a forward-looking evaluation at the time of the estimate, not on a

21  backward-looking evaluation after the fact."  *Conklin v. Univ. of Wash. Sch. of Med.*, 25

22  //

1    Wash. App. 2d 1010, No. 83200-0-I, 2023 WL 21565, at *9, (2023) (unpublished[10]) (first

2    citing *Hikel v. City of Lynnwood*, 389 P.3d 677, 681 (Wash. Ct. App. 2016), and then

3    quoting *Freedom Found.*, 445 P.3d at 978).

4           Here, UWMC timely acknowledged Ms. Spokoiny's public records requests and

5    produced documents on a rolling basis.  (Saunders Decl. (Dkt. # 19) ¶ 14, 18 (stating that

6    documents were produced in batches starting March 5, 2021, through August 17, 2023);

7    *see also id.* ¶ 16, Ex. 4 ("First Response") at 1 (acknowledging Ms. Spokoiny's first

8    request one week after it was submitted); *id.* ¶ 18, Ex. 8 ("Second Response").)

9    (acknowledging Ms. Spokoiny's second request one week after it was submitted).)  Ms.

10   Spokoiny submitted her requests during the height of the COVID-19 pandemic, and the

11   University of Washington's Public Records Office ("PRO") informed her that there were

12   over 300 other open requests and over 1.5 million pages of records that needed review at

13   the time.  (Second Response at 3.)  Ms. Spokoiny responded to the PRO in part as

14   follows:  "Surely you can simply ask . . . for the documents and receive within days. . . .

15   I will save you 12 months and copy [a document custodian] on this response."  (*Id.* at 4.)

16          Ms. Spokoiny emphasizes the PRO's delay in producing documents but does not

17   provide any evidence suggesting that UWMC's delay was unreasonable.  (*See generally*

18   Resp.)  As UWMC argues, and as Ms. Spokoiny's email to the PRO suggests, Ms.

19   //

20          [10]  Although unpublished opinions of the Washington Court of Appeals "have no

21   precedential value and are not binding upon any court," they "may be accorded such persuasive
     value as the court deems appropriate."  Wash. Gen. Rule GR 14.1; *see also Emps. Ins. of Wausau*

22   *v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider
     unpublished state decisions, even though such opinions have no precedential value.").

1    Spokoiny erroneously equates "available records" with those "ready for production" and

2    ignores the global circumstances in which she made her requests, the backlog of other

3    requests ahead of hers, and the 1.5 million pages of records requiring review.  (Reply at

4    11; *see also* Second Response at 4.)  Ms. Spokoiny also ignores UWMC's discussion of

5    *Conklin*, a case in which the Washington Court of Appeals determined that similar delays

6    under similar circumstances were reasonable and did not violate the PRA.  (*See* Mot. at

7    25); *See generally* Resp.)  *See Conklin*, 2023 WL 21565, at *6, *9-11 (holding that the

8    University of Washington's 307-day delay was not unreasonable where "the COVID-19

9    pandemic impacted the records response" and the evidence demonstrated that UW acted

10   diligently).  Ms. Spokoiny cites just one case in support of her argument, but as *Conklin*

11   explains, the school district in that case was not "diligently working on any requests"—

12   unlike UWMC in this case.  (*See* Resp. at 14 (citing *Cantu v. Yakima Sch.*

13   *Dist. No. 7*, 514 P.3d 661 (2022))); *see also Conklin*, 2023 WL 21565, at *11

14   (distinguishing *Cantu*).

15        Ms. Spokoiny provides no evidence to refute UWMC's evidence that the PRO's

16   delay was reasonable.  Ms. Spokoiny speculates that the PRO's production "was

17   intentionally delayed" because "the average time for production of any one request

18   should be around 4 months."  (Resp. at 13-14 (arguing that because the 321 requests in

19   the PRO's backlog in August 2023 represented "roughly 1/3 of the total annual requests,"

20   the production time should have been only 1/3 of the year).)  But the number of "total

21   annual requests" does not reveal the number of requests actually pending, nor does it

22   have any bearing on the average timeframe for responding to a given PRA request.  Ms.

1   Spokoiny's deduction also ignores the context of each request and other factors that may

2   contribute to delay, such as staff resources.  The question is whether UWMC acted

3   reasonably with respect to Ms. Spokoiny's particular requests, and Ms. Spokoiny has

4   directed the court to no evidence from which a reasonable factfinder could conclude that

5   it did not.  UWMC is therefore entitled to summary judgment on this claim.

6                              **V.  CONCLUSION**

7          For the foregoing reasons, the court GRANTS UWMC's motion for summary

8   judgment (Dkt. # 12) and DISMISSES this matter with prejudice.  UWMC's motion to

9   reset the trial date (Dkt. # 29) is DENIED as moot.

10         Dated this 4th day of January, 2024.

11

12                                    JAMES L. ROBART
                                     United States District Judge

13

14

15

16

17

18

19

20

21

22

ORDER - 26